**William MATTINGLY,**
**Appellant/Cross–**
**Appellee**

v.

**Daisy MITCHELL, as Administrator of**
**the Estate of Latonia Mitchell,**
**Appellee/Cross–Appellant.**

Nos. 2012–CA–000083–MR,
2012–CA–000121–MR.

Court of Appeals of Kentucky.

June 21, 2013.

Discretionary Review Denied by Supreme Court April 9, 2014.

Gary E. Siemens, Timothy D. Lange, Louisville, KY, for Appellant/Cross–Appellee.

Kevin C. Burke, John Decamillis, Robert D. Mattingly, Louisville, KY, for Appellee/Cross–Appellant.

Before COMBS, STUMBO and THOMPSON, Judges.

*OPINION*

THOMPSON, Judge:

William Mattingly filed this interlocutory appeal from an order of the Jefferson Circuit Court determining that he was not entitled to qualified official immunity and that a question of fact remained regarding whether Mattingly's actions were the proximate cause of an accident in which Latonia Mitchell was killed. Daisy Mitchell, as Administrator of the Estate of Latonia Mitchell, (the Estate) cross-appealed from that portion of the court's order granting summary judgment in favor of Mattingly in his official capacity as a Louisville Metro Police Department Officer and on the Estate's 42 U.S.C. § 1983 claim. We affirm the circuit court's determination that Mattingly is not entitled to qualified official immunity in his individual capacity. Because the remaining portions of the circuit court's order are not subject to immediate appeal, we do not address those issues.

This action was filed after an automobile collision occurred on January 22, 2008, that caused serious injury to Barbara Cowan[1] and killed Latonia Mitchell. The events leading to the collision began when Mattingly, working as an on-duty Louisville Metro Police Officer, observed a black

---

1. Mattingly and Cowan have settled all claims and Cowan's claims have been dismissed.

BMW, later determined to be operated by Gabriel Nelson, speeding on the Watterson Expressway. Mattingly activated the lights on his Ford F–250 marked police truck, followed the BMW down the Third Street exit ramp, and attempted to stop the BMW at a nearby convenience store. Although the BMW appeared to be stopping, it reentered the Watterson and a high-speed pursuit ensued.

Officer Sutherland, also an on-duty Louisville Metro Police Officer, was driving on the Watterson when he observed the pursuit. However, because he believed that the pursuit was not in accordance with the Louisville Metro Police Department's Standard Operating Procedures, he did not join the pursuit and stationed his vehicle at the bottom of the Taylor Boulevard exit with his lights engaged.

With Mattingly in pursuit, the BMW exited the Watterson at Taylor Boulevard and proceeded past Sutherland's vehicle. Mattingly passed Sutherland's vehicle but shortly thereafter disengaged the chase. However, several blocks away but within sight of Mattingly and Sutherland, the BMW collided with Cowan's vehicle.[2]

After an investigation by the Louisville Metro Police Department, Mattingly was found guilty of misconduct for violating the Department's Standard Operating Procedures when he pursued the BMW at a high rate of speed on wet road conditions for a traffic violation with minimal ability to apprehend Nelson and without considering the risk created against the need for apprehension. The specific sections Mattingly violated provide as follows:

*POLICY REVIEW: PURSUITS DEFINITION*
S.O.P. 12.1.2 states:
> Pursuit: An active attempt by a law enforcement officer operating a police vehicle, utilizing emergency equipment, to apprehend the operator of a fleeing vehicle who is attempting to avoid arrest by using speed or other evasive tactics.

*RESPONSIBILITIES OF PRIMARY UNIT*
S.O.P. 12.1.3 states:
The decision to initiate a pursuit must be based on the pursuing officer's reasonable belief that the suspect is a felon or suspected felon. The officer must weigh the immediate danger or potential danger to the public should the suspect be allowed to remain at large against the danger or potential danger created by the pursuit itself.

- Nature and seriousness of the offense
- The amount of vehicular and pedestrian traffic in the area
- Likelihood of successful apprehension
- Area or location characteristics
- Availability of assistance
- Environmental conditions (e.g. lighting and weather)
- The performance capabilities of the pursuit vehicle
- The condition of the road surface on which the pursuit is being conducted
- The officer's familiarity with the geographic area of the pursuit

The officer initiating the pursuit shall, as soon as practical, provide the following information by radio:

- Car number
- Location
- Direction of travel
- Approximate speed

---

2. Nelson pled guilty to second-degree manslaughter, second-degree assault, first-degree fleeing or evading police, first-degree wanton endangerment, first-degree criminal mischief, reckless driving, speeding, and being a persistent felony offender in the first degree.

- Reason for pursuit
- Vehicle description
- License number if known
- Number and description of occupants
- Traffic conditions

Failure to provide the information to MetroSafe shall result in an immediate termination of the pursuit by a commanding officer. The initiating unit shall be in command and bear operational responsibility for the pursuit until the pursuit is acknowledged by a commanding officer.

Unmarked and specialty vehicles shall have a fully marked police vehicle involved in the pursuit as soon as possible. The marked unit shall take over the primary unit position when feasible. Police vehicles and rental vehicles without emergency lights and siren are prohibited from participating in a pursuit.

*POLICY REVIEW: PURSUITS NON INITIATION OF PURSUITS*

S.O.P. 12.1.9 states:

Officers shall not initiate or participate in a pursuit when:

- The offense is a traffic infraction or misdemeanor.
- The offense is a non-violent felony wherein the suspect is known.
- When passengers or prisoners are in the police vehicle.

*POLICY REVIEW: PURSUITS TERMINATION*

S.O.P. 12.1.10 states:

Pursuits shall be terminated when the risks created by continuing the pursuit outweigh the need for immediate apprehension.

An officer's decision to terminate a pursuit for safety reasons is not subject to criticism or review.

Pursuits shall be terminated immediately when the following occur:

- A supervisor in charge of the pursuit or a higher-ranking officer orders it terminated
- The officer loses visual contact and the likelihood for apprehension is lessened
- The officer doesn't believe it to be safe to continue the pursuit
- The officer is lost and unfamiliar with the area
- The officer is out of radio range or loses contact with communications

Felonies that occur as a direct result of the pursuit itself (e.g. Fleeing and Evading, Wanton Endangerment) are not justification for continuing a pursuit.

Pursuits may be terminated by the pursuing officer, the supervisor in charge of the pursuit or any commanding officer of a higher rank than the supervisor who is in charge of the pursuit. Supervisors will be held accountable for failure to exercise authority under this section.

Mattingly was suspended for ten days but the time was later reduced to five days.

The Estate filed this action in the Jefferson Circuit Court against Mattingly in his individual and official capacities for negligence and substantive due process violations under 42 U.S.C. § 1983. Mattingly filed a motion for summary judgment.

The circuit court denied Mattingly's motion for summary judgment in part and granted it in part. It ruled that Mattingly's operation of his police vehicle during the pursuit was ministerial in nature and, therefore, he was not entitled to qualified official immunity. It also ruled that a material issue of fact remained regarding whether Mattingly's pursuit was the proximate cause of the collision.

The circuit court granted summary judgment with respect to the Estate's claim against Mattingly in his official ca-

pacity based on sovereign immunity. It also granted summary judgment in Mattingly's favor regarding the § 1983 claim because the Estate failed to establish a *prima facie* case of a deprivation of any substantive due process rights.

■ First, we address the denial of qualified official immunity. An order denying a claim of immunity is subject to immediate appeal. *Breathitt County Board of Education v. Prater,* 292 S.W.3d 883, 886–87 (Ky.2009). The rule and its logic were explained in *Prater:*

> Obviously such an entitlement cannot be vindicated following a final judgment for by then the party claiming immunity has already borne the costs and burdens of defending the action. For this reason, the United States Supreme Court has recognized in immunity cases an exception to the federal final judgment rule codified at 28 U.S.C. § 1291. In *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), the Court reiterated its position that "the denial of a substantial claim of absolute immunity is an order appealable before final judgment." *Id.* at 525, 105 S.Ct. 2806 *citing Nixon v. Fitzgerald,* 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982). We find the Supreme Court's reasoning persuasive, and thus agree with the Court of Appeals that an order denying a substantial claim of absolute immunity is immediately appealable even in the absence of a final judgment.

*Id.* Although *Prater* involved a claim of absolute immunity, the rule is logically extended to a claim of qualified official immunity. Therefore, Mattingly is entitled to bring this interlocutory appeal concerning the denial of qualified official immunity.

■ Summary judgment is only proper when "it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor." *Steelvest, Inc. v. Scansteel Service Center, Inc.,* 807 S.W.2d 476, 480 (Ky.1991). In ruling on a motion for summary judgment, the Court is required to construe the record "in a light most favorable to the party opposing the motion . . . and all doubts are to be resolved in his favor." *Id.*

■ "The immunity that an agency enjoys is extended to the official acts of its officers and employees. However, when such officers or employees are sued for negligent acts in their individual capacities, they have qualified official immunity." *Autry v. Western Kentucky University,* 219 S.W.3d 713, 717 (Ky.2007).

■ Under the qualified immunity doctrine, public officers and employees are shielded from liability for the negligent performance of discretionary acts in good faith and within the scope of their authority. *Yanero v. Davis,* 65 S.W.3d 510, 522 (Ky.2001). The distinction between a discretionary act and a ministerial act is pivotal to the immunity determination. A discretionary act involves the exercise of discretion and judgment or personal deliberation. *Id.* A ministerial act is one that is "absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* The *Yanero* Court elaborated: "An act is not necessarily 'discretionary' just because the officer performing it has some discretion with respect to the means or method to be employed." *Id.* Quoting *Upchurch v. Clinton County,* 330 S.W.2d 428, 430 (Ky. 1959), the Court emphasized "[t]hat a necessity may exist for the ascertainment of those facts does not operate to convert the act into one discretionary in nature." *Id.* Because few acts are purely discretionary or purely ministerial, the courts must look for the "*dominant* nature of the act." *Ha-*

*ney v. Monsky,* 311 S.W.3d 235, 240 (Ky. 2010).

The circuit court ruled that safely driving a police vehicle in a pursuit is a ministerial function and denied Mattingly qualified official immunity. It relied heavily on *Jones v. Lathram,* 150 S.W.3d 50 (Ky. 2004), where the Kentucky Supreme Court held that "the act of safely driving a police cruiser, even in an emergency, is not an act that typically requires any deliberation or the exercise of judgment. Rather, driving a police cruiser requires reactive decisions based on duty, training, and overall consideration of public safety." *Id.* at 53. Consequently, safely driving a police cruiser in responding to an emergency call from a fellow officer was a ministerial act and, therefore, the officer was not entitled to qualified official immunity. *Id.*

We agree with Mattingly that *Jones* is distinguishable. In *Jones,* the police officer drove a police vehicle in response to a call for assistance from another officer and was not in pursuit of a suspect when he hit another vehicle. In contrast, Mattingly was in pursuit of a suspect and did not collide with Cowan's vehicle. The issue is not how Mattingly operated the police vehicle during the pursuit, but whether he should have initiated the pursuit or terminated the pursuit earlier. However, we cannot agree that Mattingly's actions can be properly characterized as discretionary.

Mattingly relies on *Walker v. Davis,* 643 F.Supp.2d 921, 932 (W.D.Ky.2009), where the Federal Court commented that an officer's decision to initiate or continue a pursuit of a suspect is discretionary. However, this was not the Federal Court's holding. Ultimately, it held that the case was controlled by *Jones* and the officer was not entitled to immunity. *Id.* at 932–33. It is unnecessary for this Court to decide whether the Federal Court's statement regarding the discretionary nature of a police officer's pursuit of a suspect is

a correct interpretation of Kentucky law. The Louisville Metro Police Department's Standard Operating Procedures contain specific directives when an officer initiates or continues a suspect's pursuit. Again, *Yanero* is instructive.

Our Supreme Court held teachers assigned to supervise a school-sponsored baseball practice were not entitled to qualified official immunity because the school had an established rule that children were required to wear batting helmets during baseball batting practice. The "enforcement of a known rule requiring that student athletes wear batting helmets during baseball batting practice" was a ministerial act. *Yanero,* 65 S.W.3d at 529. Subsequently, in *Haney,* the Supreme Court emphasized the helmet rule in *Yanero* represented "an essentially objective and binary directive" and compliance was not a matter of degree. *Haney,* 311 S.W.3d at 242. "That is to say, the children were plainly wearing their helmets during batting practice or they were not." *Id.*

Here, the same principle applies. Whatever discretion Mattingly may have had in initiating and continuing a pursuit, it was limited by the Louisville Metro Police Department's Standard Operating Procedures. As set forth earlier in this opinion, those procedures provide specific directives to its officers when initiating or engaging in a pursuit. The repeated use of the term "shall" establishes that compliance with its provisions involve "merely execution [or nonperformance] of a specific act arising from fixed and designated facts." *Yanero,* 65 S.W.3d at 522. Mattingly's pursuit of the BMW constituted an "identifiable deviation from an absolute, certain, and imperative" order. *Haney,* 311 S.W.3d at 245 (internal quotations omitted). He either violated the procedures or he did not. Under the undisputed facts that Mattingly violated the procedures, the circuit court properly ruled that

Mattingly is not entitled to qualified official immunity.

Having resolved the question of qualified official immunity, we turn to Mattingly's contention that the circuit court erred when it denied his motion for summary judgment on the basis that his actions were not the proximate cause of the accident and to the Estate's cross-appeal. Our initial inquiry is whether this Court has jurisdiction to consider the issues presented. *Wilson v. Russell,* 162 S.W.3d 911, 913 (Ky.2005). We conclude that we do not.

Kentucky Rules of Civil Procedure (CR) 54.01 limits "appealable judgment[s]" to "final order[s] adjudicating all the rights of all the parties in an action or proceeding[.]" In this case, we are affirming the circuit court's denial of qualified official immunity and claims remain to be adjudicated in the circuit court. Unless an exception to CR 54.01 exists, our review of the remaining issues is precluded. We first address the issue presented by Mattingly that he was entitled to summary judgment because his pursuit of the BMW was not the proximate cause of the collision.

■ Generally, an order denying a motion for summary judgment is not appealable. *Gumm v. Combs,* 302 S.W.2d 616, 617 (Ky.1957). Mattingly contends that this case falls within an exception to that rule allowing an appeal from the denial of a summary judgment motion when the only basis of the ruling is a matter of law. In this case, the exception is not applicable because the basis of the circuit court's ruling was its determination that material issues of fact remain to be resolved. Consequently, the issue is not subject to review by this Court. *Id.*

■ Likewise, the Estate's cross-appeal is governed by CR 54.01. The Estate contends that the rule stated in *Prater* should apply when official immunity is *granted* to carve out yet another exception to that rule. The scope of *Prater* is limited: "[A]n order *denying* a substantial claim of absolute immunity is immediately appealable even in the absence of a final judgment." *Prater,* 292 S.W.3d at 887 (emphasis added). The reason for the rule is that governmental immunity frees the government agency from the burdens of litigation, not just liability. *Id.* However, that same reasoning is not applicable when immunity is granted. Because the government is not subjected to the very burdens immunity prohibits, we do not believe an extension of the *Prater* rule is warranted. The Estate can correct any error by filing an appeal following a final judgment. *South Woodford Water Dist. v. Byrd,* 352 S.W.3d 340, 343 (Ky.App.2011).

We add a caveat. In what it characterizes as a protective cross-appeal, the Estate argues that if the circuit court is reversed on the issue of qualified official immunity, its action against Mattingly will be final and remand would be for the limited purpose of the circuit court adding the appropriate finality language. Although judicial expediency may favor the Estate's argument, because we are affirming, we conclude that CR 54.01 precludes review.

Similarly, we reject the Estate's invitation to decide the merits of its § 1983 claim based on the circuit court's ruling that it failed to establish a *prima facie* case of a deprivation of substantive due process. Again, this is a claim that can be the subject of an appeal following a final judgment. *Id.*

Based on the foregoing, the order of the Jefferson Circuit Court is affirmed.

ALL CONCUR.