RENDERED: APRIL 21, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0499-MR

DONNA HARDIN　　　　　　　　　　　　　　　　　　　　APPELLANT

v.　　　　APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE A. C. McKAY CHAUVIN, JUDGE
ACTION NO. 20-CI-004041

STEVEN POND　　　　　　　　　　　　　　　　　　　　　APPELLEE

OPINION
VACATING
AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND TAYLOR, JUDGES.

TAYLOR, JUDGE: Donna Hardin brings this appeal from an April 14, 2021,

Opinion and Order of the Jefferson Circuit Court granting summary judgment and

dismissing Hardin's negligence claims against Steven Pond upon the basis of

qualified official immunity. We vacate and remand.

## BACKGROUND

Pond was a police officer with the Louisville Jefferson County Metro Government. On July 16, 2019, Officer Pond was on patrol in his police cruiser and spotted a stolen vehicle at a Speedway gas station. Officer Pond confirmed that the vehicle was stolen and then ordered the driver out of the vehicle. The driver disregarded Officer Pond's commands and drove away in the vehicle. Officer Pond pursued the driver of the stolen vehicle. The driver lost control of the stolen vehicle and hit a vehicle driven by Hardin. Hardin suffered injuries as a result of the accident.

On July 13, 2020, Hardin filed a complaint against, *inter alios*, Officer Pond. Hardin alleged that Officer Pond negligently and in violation of various Louisville Metro Police Department Standard Operating Procedures (SOP) initiated and continued the vehicle pursuit that caused the accident and her injuries. In particular, Hardin claimed:

**FIRST CAUSE OF ACTION**
**(General Negligence in the Pursuit of Subject)**

. . . .

33) In violation of SOP 12.1.1 Policy, the officer should never have initiated the pursuit because the defendant was not committing a violent felony. Browning's vehicle is defined as a "speeding vehicle" for the purposes of the policy. A violent felony for purposes of this policy does not include theft of vehicle. Specifically, the policy defines "violent felony offender" which includes several

-2-

offenses all involving danger of serious injury to individuals. [Hardin] contends that [Louisville Metro Police Department] LMPD is negligent in the initiation and in the pursuit of Browning.

34) In violation of SOP 12.1.1, the officer should not initiate a pursuit when the conditions of pursuit cause a violent felony. As detailed in the facts above, the officer states before he ever gets into his vehicle the Defendant (Pond) states, "Sub. then pulled out of the parking lot at a high rate of speed with the intent to elude police. By fleeing, sub. created a substantial risk of serious physical injury or death to others on the roadway." This specific fact as stated by the officer in his Uniform Citation, was indication that the pursuit should not have occurred and that the damage to [Hardin] should have been foreseeable.

35) In violation of SOP 12.1.3, the officer failed to evaluate these factors before the pursuit, and failed to recognize them. Particularly, the officer failed to recognize the area or location characteristics. Specifically, the pursuit proceeded down Greenwood Road in a highly traveled area in a residential section of . . . Jefferson County. The officer failed to recognize that the pursuit in this congested area was a foreseeable cause of the injuries to [Hardin].

36) Pursuant to SOP 12.1.9, the officer was required to terminate the pursuit for several reasons. Primarily, the officer must terminate the pursuit when he believes it is not safe to continue the pursuit. Officer states that the Browning left the parking lot at a high rate of speed and continued at a high rate of speed. Officer states the Browning struck another vehicle before colliding into [Hardin]. Under circumstances manifesting extreme indifference to the value of human life, Browning wantonly engaged in conducted [sic] causing him to strike Mr. Keeney's vehicle which created a risk of substantial danger of death or serious physical injury.

-3-

Further, the officer should terminate the pursuit when the officer loses visual contact with the subject. The officer should have concluded this pursuit immediately when Browning sped off and out of sight before the officer was ever in his vehicle.

37) Pursuant to SOP 12.1.3, the officer should have considered the nature and seriousness of the underlying offense. In particular, the underlying offense is theft of the motor vehicle. In the additional facts, LMPD had the specific information that Browning was photographed taking the vehicle by witness, which allowed detectives to make an identification. Browning had a prior record and could have been easily identified by mugshot or other identification programs. Further, the value of the vehicle listed as $6,500 per the Officer's report. The officer could easily have let Browning leave, and no individual would have been injured and they could have later identified Browning by photograph. Additionally, the officer initiated this pursuit under circumstances manifesting extreme indifference to the value of human life as the officer wantonly engaged in conduct over a $6,500 vehicle, when they had pictures of Browning and identifiable information of the vehicle. There is no justification for this negligent, high-speed pursuit, which was foreseeable to result in death or serious physical injury.

. . . .


**SECOND CAUSE OF ACTION**
**(Intentional Infliction of Emotional Distress – Against The Individual Defendants)**

. . . .

45) The foregoing conduct caused [Hardin] to suffer severe and extreme emotional distress. The individual defendants' conduct was the proximate cause of harm

-4-

and damage to [Hardin], and by reason of the foregoing alleged acts and conduct, [Hardin] is entitled to damages against the individual defendants, all according to proof at trial.

46) The individual defendants engaged in the aforementioned acts maliciously, callously, oppressively, wantonly, recklessly, fraudulently, with deliberate, indifference to the rights allegedly violated, despicably and with evil motive and/or intent, and in disregard of the rights of the [Hardin]. [Hardin] is therefore entitled to and does seek exemplary damages against the individual defendants.

. . . .

## THIRD CAUSE OF ACTION
## (Negligent Infliction of Emotional Distress – Against The Individual Defendants)

48) [Hardin] hereby incorporates by references all of the allegations contained in paragraphs 1 through 47 above, and though fully set forth herein.

49) The negligent actions of the individual defendants, as set forth above, [were] extreme and outrageous. Said negligent conduct was foreseeable to cause, and was the proximate cause of, severe emotional distress to [Hardin]. The individual defendants, by their negligent acts and/or omissions, conducted themselves in a manner that went beyond all common notions of decency. The individual defendants engaged in conduct intended to cause extreme indifference to human life. The individual defendants, through their actions and the actions of their agents, directly injured [Hardin] by their failure to act in accordance with common notions of fairness and decency.

50) The foregoing negligent conduct caused [Hardin] to suffer severe and extreme emotional distress. The

individual defendants' negligent actions [were] the proximate cause of harm and damage to [Hardin], and by reason of the foregoing alleged acts and conduct, [Hardin] is entitled to damages against the individual defendant, all according to proof at trial.

Complaint at 6 – 10.

Officer Pond filed a motion to dismiss. Pond argued he was entitled to qualified official immunity. Specifically, Pond maintained that his decision to initiate and continue the vehicle pursuit was discretionary. Additionally, Officer Pond asserted that his actions were in conformity with the SOP.

On April 14, 2021, the circuit court rendered summary judgment concluding that Officer Pond was entitled to qualified official immunity. The circuit court concluded that Officer Pond's decisions to initiate and continue the vehicle pursuit constituted a discretionary act. This appeal follows.

STANDARD OF REVIEW

To begin, as matters outside the pleadings were presented in the motion to dismiss, the circuit court properly treated the motion as a motion for summary judgment. Kentucky Rules of Civil Procedure (CR) 12.02. Summary judgment is proper where there exists no material issue of fact and the moving party is entitled to judgment as a matter of law. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476 (Ky. 1991). There being no factual issues, our review of a summary judgment looks only to questions of law, whereupon our

-6-

review is *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016); *see also Peterson v. Foley*, 559 S.W.3d 346, 348 (Ky. 2018). Our review proceeds accordingly.

ANALYSIS

Hardin contends that the circuit court improperly rendered summary judgment concluding that Officer Pond was entitled to qualified official immunity. Relying upon Special Order #19-001, issued by Chief of Police Steve Conrad, and various SOP, Hardin maintains that Officer Pond's decision to initiate and continue the vehicle pursuit was ministerial:

> [T]he LMPD "Special Order" details that [Officer Pond] should initiate a pursuit if a vehicle is stolen and the commanding officer has determined prior to initiating a pursuit, that the vehicle is stolen. The Special Order's sole purpose is to temporarily amend prior operating procedures, to now instruct officers to pursue stolen vehicles if the officer follows additional directives. The Special Order was specifically written to eliminate the discretionary decision making of [Officer Pond]. In application of both the SOPs and the Special Order, [Officer Pond] was not required to make any decision about the appropriateness of the pursuit. This decision is not discretionary because there is no need to discern the correct action in a legally uncertain environment, because [Officer Pond's] actions to be taken were clearly detailed within the Special Order. There is no legally uncertain environment, because Officer Pond is following an [sic] executing a fixed set of directives given to him by his commanding officers.

Hardin's Brief at 10 (citation omitted). Thus, Hardin asserts that Officer Pond was not entitled to qualified official immunity.[1]

In Kentucky, a public official sued in his individual capacity for negligence may be entitled to the shield of qualified official immunity. To be entitled to qualified official immunity, the public official must have engaged in a discretionary act as opposed to a ministerial act. A ministerial act is generally "one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). Conversely, a discretionary act is one "involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment[.]" *Id.* at 522. When the public official performs a discretionary act, the official is entitled to qualified official immunity if such act was carried out within the scope of her employment and in good faith. *Yanero*, 65 S.W.3d at 523. As most acts are

---

[1] Donna Hardin cites to *Mattingly v. Mitchell*, 425 S.W.3d 85 (Ky. 2013) as dispositive. We disagree. In *Mattingly*, a Louisville Metro Police Officer initiated a vehicle pursuit of a BMW for speeding on the Watterson Expressway. The BMW eventually struck another vehicle causing injuries to its occupants. *Id.* Under the relevant Standard Operating Procedures (SOP) 12.1.9, an officer shall not initiate a vehicle pursuit for a traffic infraction or nonviolent felony. The Supreme Court determined that use of the word "shall" in SOP 12.1.9 and other SOP indicated a ministerial act as opposed to a discretionary act. The SOP as set forth in *Mattingly*, and the SOP at issue in this appeal are different in their terminology and effect. As a result, we view *Mattingly*, 425 S.W.3d 85 as distinguishable.

neither purely discretionary or purely ministerial, it is the "dominant nature of the act" that controls. *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010).

To resolve this appeal, we must examine several SOP and Special Order #19-001. The relevant SOP are as follows:

**12.1 PURSUITS**

**12.1.1 POLICY**

It is the policy of the LMPD that the pursuit operation of a police vehicle is justified only when the need of immediate apprehension outweighs the dangers created by the pursuit.

A "fleeing vehicle," for the purposes of this policy, is defined as one that increases speed, refuses to stop, extinguishes its headlights and/or taillights, or uses other evasive means with the intent to elude a police officer following a signal to stop given by the officer to the driver of a motor vehicle. Absent an overt act to flee from the police, if he/she may do so with due regard, an officer may attempt to catch up to the vehicle and remain behind it for a reasonable amount of time in order to verify the driver is aware he/she is being directed to stop. Once the driver is aware of the officer's presence and the driver either refuses to stop or takes evasive maneuvers, the officer must adhere to this pursuit policy and Kentucky Revised Statutes (KRS).

The officer must have a reason to believe the violator being pursued has committed, or is wanted on a warrant for committing, a violent felony. Officers may also pursue a motor vehicle under the following additional special circumstances:

• The suspect is a known subject who has been previously identified as a violent felony offender for offenses defined in this policy;
• The suspect is a known subject who is the focus of an ongoing investigation for a violent felony;
• When the officer has reasonable suspicion that the subject in the vehicle has committed, is about to commit, or is currently committing a violent felony as defined in this policy; or
• When a suspect is operating a stolen emergency vehicle, as emergency vehicles may contain weapons or present a danger to homeland security when stolen.

In all pursuits, a commanding officer will acknowledge, engage in, and directly control the pursuit as soon as practical.

. . . .

Officers must pursue with the vehicle's emergency lights and siren in continuous operation. Police vehicles are exempt from most traffic regulations, pursuant to KRS 189.940. However, no portion of this statute relieves the driver from operating the vehicle with due regard for the safety of all persons using the roadway.

. . . .

## 12.1.3 PRIMARY UNIT RESPONSIBILITIES
[Kentucky Association of Chiefs of Police Model Policies] KACP 21.2a-b)

The decision to initiate a pursuit must be based on the pursuing officer's reasonable belief that the circumstances outlined in SOP 12.1.1 have been met.

The pursuing officer will consider the following factors in determining whether to initiate a pursuit:

- The nature and seriousness of the offense
- The amount of vehicular and pedestrian traffic in the area
- The likelihood of successful apprehension
- The area or location characteristics
- The availability of assistance
- The environmental conditions (e.g. lighting and weather)
- The performance capabilities of the pursuit vehicle
- The condition of the road surface on which the pursuit is being conducted
- The officer's familiarity with the geographic area of the pursuit

The officer initiating a pursuit should, as soon as practical, provide the following information by radio:

- Car number
- Location
- Direction of travel
- Approximate speed
- Reason for pursuit
- Vehicle description
- License number, if known
- Number and description of occupants
- Traffic conditions

The failure to provide this information to MetroSafe may result in an immediate termination of the pursuit by a commanding officer. The initiating unit will be in command and bear operational responsibility for the pursuit until the pursuit is acknowledged by a commanding officer.

## 12.1.9 TERMINATION (KACP 21.2g)

Pursuits will be terminated when the risks created by continuing the pursuit outweigh the need for an immediate apprehension.

An officer's decision to terminate a pursuit for safety reasons is not subject to criticism or review.

Pursuits will be terminated immediately when any of the following occur:

> • A supervisor in charge of the pursuit, or a higher-ranking officer, issues an order of termination;
> • The officer loses visual contact and the likelihood for apprehension is decreased;
> • The officer doesn't believe that it is safe to continue the pursuit; or
> • The officer is out of radio range or loses contact with MetroSafe.

Pursuits may be terminated by the pursuing officer, the supervisor in charge of the pursuit, or any commanding officer of a higher rank than the supervisor who is in charge of the pursuit. Supervisors will be held accountable for the failure to exercise authority under this section.

. . . .

And, Special Order #19-001, reads in relevant part:

> **Vehicular Pursuit Initiation Modification for Verified Stolen Autos**
> **Special Order #19-001**
>
> Effective immediately, I am approving LMPD officers to initiate a vehicle pursuit under the following special circumstances:
>
> > • The officer has determined, prior to initiating a pursuit, the vehicle is stolen (via MetroSafe); and
> > • The commanding officer will acknowledge, over the radio, the verified stolen vehicle to continue the pursuit. The commanding officer will be in

-12-

close proximity, engage in, and directly control the pursuit.

SOP 12.1.1 is entitled "Policy." To be permitted to initiate a vehicle pursuit, SOP 12.1.1 mandates the officer possess "a reason to believe the violator being pursued has committed, or is wanted on a warrant for committing, a violent felony." Additionally, SOP 12.1.1 specifically mandates that an officer is permitted to initiate a vehicle pursuit if: (1) the suspect is known and has been previously identified as a felony offender, (2) the suspect is known to be under investigation for a violent felony, (3) the officer possesses a reasonable suspicion that the subject has committed, is going to commit, or is committing a violent felony, or (4) the suspect is fleeing in a stolen emergency vehicle, which may contain weapons or present a danger to homeland security. And, Special Order #19-001 provides that a vehicle pursuit is additionally permitted when: (1) the officer determines the vehicle is stolen before initiating the pursuit and (2) the commanding officer acknowledges the verified stolen vehicle and the commanding officer will be in "close proximity, engage in, and directly control the pursuit."

Taken together SOP 12.1.1 and Special Order #19-001 set forth the limited circumstances when an officer is permitted to initiate a vehicle pursuit. As a consequence, a vehicle pursuit is only permitted when the limited circumstances of SOP 12.1.1 or Special Order #19-001 exist, and these are ministerial mandates that require neither judgment nor deliberation by an officer. *See Meinhart v.*

-13-

*Louisville Metro Gov't*, 627 S.W.3d 824, 834 (Ky. 2021).[2] However, if the limited circumstances set forth in either SOP 12.1.1 or Special Order #19-001 do occur, the decision by an officer to actually initiate such a pursuit is then controlled by SOP 12.1.3.

So, SOP 12.1.3 is triggered only when the limited circumstances of either SOP 12.1.1 or Special Order #19-001 exist. Once triggered, an officer's ultimate decision to actually initiate a vehicle pursuit under SOP 12.1.3 is dependent upon various factors, including traffic in the area, likelihood of success, environmental conditions, and availability of assistance. Under SOP 12.1.3, it is clear that an officer's decision to, in fact, initiate a vehicle pursuit requires the deliberation and exercise of judgment by the police officer. *See Meinhart*, 627 S.W.3d at 834. As a result, we conclude that an officer's decision to actually initiate a vehicle pursuit under SOP 12.1.3 is discretionary. *See Meinhart*, 627 S.W.3d at 834.

As to termination of a vehicle pursuit, SOP 12.1.9 provides generally that a pursuit should be terminated "when the risks created by continuing the pursuit outweigh the need for an immediate apprehension." More specifically,

---

[2] In *Meinhart v. Louisville Metro Gov't*, 627 S.W.3d 824 (Ky. 2021), the Supreme Court was faced with the issue of whether a Louisville police officer's initiation and continued pursuit of a vehicle involved discretionary and/or ministerial acts. While the legal issue presented in *Meinhart* was identical to the legal issue presented in this appeal, the particular SOP relevant to disposition of *Meinhart* and this appeal differ in terminology. Although not dispositive, we rely upon the reasoning contained in *Meinhart*.

SOP 12.1.9 requires a vehicle pursuit to terminate when: (1) a supervisor or higher-ranking officer orders termination thereof, (2) the "officer loses visual contact and the likelihood for apprehension is decreased," (3) the officer does not "believe it is safe to continue" the vehicle pursuit, or (4) the "officer is out of radio range or loses contact with MetroSafe."

SOP 12.1.9 includes both discretionary and ministerial acts. The general requirement to terminate a vehicle pursuit when the risks are greater than the need to immediately apprehend the suspect is inherently discretionary. *See Meinhart*, 627 S.W.3d at 834. It involves the balancing of risks versus benefits and necessarily involves the use of judgment. However, SOP 12.1.9 continues and sets forth specific instances when a vehicle pursuit must be terminated. Some of the listed instances involve the use of the officer's judgment (discretionary), and some merely require the officer to comply with its directive when certain facts are present (ministerial).

In particular, SOP 12.1.9 directs a vehicle pursuit to be terminated when a supervisor/higher-ranking officer orders same or when the officer loses radio contact/out of radio range. *See Meinhart*, 627 S.W.3d at 834. As an officer must terminate a vehicle pursuit, without any deliberation or exercise of judgment, when either factual scenario set forth above occurs, these are inherently ministerial directives.

Conversely, SOP 12.1.9 also requires a vehicle pursuit to be terminated when the officer loses visual contact and the likelihood for apprehension is decreased or when the officer no longer believes the vehicle pursuit is safe to continue. *See Meinhart*, 627 S.W.3d at 834. As the exercise of judgment and deliberation is essential by the officer under each of these scenarios, these are discretionary acts. *See id.* For example, the determination of whether the likelihood for apprehension is decreased would require the examination of a wide range of facts occurring during the pursuit coupled with the officer's experience. *See id.*

Accordingly, we conclude that Officer Pond was only permitted to initiate the vehicle pursuit if the ministerial mandates set forth in either SOP 12.1.1 or Special Order #19-001 were present. However, if the ministerial mandates set forth in either SOP 12.1.1 or Special Order #19-001 were present, Officer Pond's decision to then, in fact, initiate the vehicle pursuit was a discretionary act pursuant to SOP 12.1.3. Additionally, we are of the opinion that Officer Pond's decision to continue and not terminate the vehicle pursuit may have involved both or either discretionary and/or ministerial acts per SOP 12.1.9, depending upon the relevant facts.

In its summary judgment, the circuit court erred by concluding that all of Officer's Pond's actions were discretionary and by failing to make any

-16-

distinction between the discretionary and/or ministerial directives under the relevant SOP. We, therefore, vacate the circuit court's summary judgment as to Officer Pond's entitlement to qualified official immunity and remand for the circuit court to reconsider the issue in light of this Opinion.

We view any remaining contentions of error as moot or without merit.

For the foregoing reasons, the Opinion and Order of the Jefferson Circuit Court is vacated and remanded for proceedings consistent with this Opinion.

ALL CONCUR.

BRIEFS FOR APPELLANT:

William M. Thompson III
Somerset, Kentucky

BRIEF FOR APPELLEE:

Michael J. O'Connell
Gregory Scott Gowen
Louisville, Kentucky