RENDERED: AUGUST 26, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0237-DG

CHRIS MEINHART, ADMINISTRATOR OF THE         APPELLANTS
ESTATE OF DEMETRA BOYD; JUNENEAN
HUSTON, AS PARENT, NEXT FRIEND AND ON
BEHALF OF DEMETRICK BOYD, JR., A MINOR;
TOSCA BELL, AS PARENT, NEXT FRIEND AND ON
BEHALF OF LYNN-ASIA BELL, A MINOR; TOSCA
BELL, AS PARENT, NEXT FRIEND AND ON BEHALF
OF KEI-VONTEZ BELL, A MINOR; TOSCA BELL, AS
PARENT, NEXT FRIEND AND ON BEHALF OF
CORTEZ MOORE; LYNN TILLMAN AND DARNELL
BOYD, AS PARENTS, NEXT FRIENDS AND ON
BEHALF OF DEMETRIUS BOYD, A MINOR;
DEMETRICK BOYD, SR.; AND AIRECA SMITH,
INDIVIDUALLY AND AS PARENT AND NEXT
FRIEND OF LOUIS SIMMONS, III, A MINOR


                    ON REVIEW FROM COURT OF APPEALS
V.               NOS. 2017-CA-0043 AND 2017-CA-0594
              JEFFERSON CIRCUIT COURT NO. 08-CI-000204


LOUISVILLE METRO GOVERNMENT; THOMAS         APPELLEES
PUGH, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS A LOUISVILLE/JEFFERSON COUNTY
METRO POLICE OFFICER; EMPIRE FIRE AND
MARINE INSURANCE CO.; AND ENTERPRISE
RENT-A-CAR COMPANY OF KENTUCKY


**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>AFFIRMING</u>**

The question presented in this appeal is whether a police officer is entitled to

qualified official immunity from liability for the decision to initiate a police

pursuit that ended in a fatal automobile accident. After years of litigation and

multiple interlocutory appeals, the Court of Appeals ultimately rejected the trial court's determination the officer's actions were ministerial rather than discretionary. The Court of Appeals, therefore, concluded the officer was shielded from liability. We granted discretionary review and, following a careful review of the record, affirm the decision of the Court of Appeals.

On January 6, 2007, Louisville Metro Police Department ("LMPD") Officer Thomas Pugh engaged in a pursuit of Donta Jones who was a suspect in an assault and purse snatching which had occurred near Fourth Street Live in downtown Louisville. Officer Pugh had been alerted by a "frantic" victim she had just been robbed and "felt lucky to be alive." As he was speaking to the victim, Jones drove past, and the victim identified him as her assailant. Officer Pugh began maneuvering his cruiser behind Jones' vehicle and activated his emergency lights. Jones came to a stop and the officer stepped from his cruiser. However, as Officer Pugh reached the rear bumper of the stopped car, Jones started his vehicle and drove away. Officer Pugh returned to his cruiser, activated his siren in addition to his emergency lights, and initiated a pursuit.

Less than two minutes after the pursuit began, with Officer Pugh trailing approximately a block away, Jones entered an intersection against a red traffic light and collided with a vehicle being operated by Demetrick Boyd, Sr. ("Boyd"). Tragically, Demetra Boyd, an unrestrained minor passenger in Boyd's vehicle, was ejected from the vehicle and died from her resulting injuries. It was her twelfth birthday. Boyd and his other six unrestrained minor passengers sustained injuries. Officer Pugh was not involved in the collision.

2

Jones subsequently pled guilty to multiple criminal charges and received a prison sentence of fifteen years.

In January 2008, Demetra's estate and the parents of the other injured children initiated civil actions against Jones, Boyd, Officer Pugh,[1] Louisville Metro Government ("Metro"), Enterprise Rent-A-Car, and Empire Fire and Marine Insurance Co.[2] Shortly thereafter, Officer Pugh and Metro moved to dismiss the actions against them on immunity grounds. In denying Officer Pugh's motion, the trial court relied on *Jones v. Lathram*, 150 S.W.3d 50 (Ky. 2004),[3] to conclude he was not entitled to immunity. The trial court did not rule on Metro's motion. Officer Pugh filed an interlocutory appeal from the adverse decision. A unanimous panel of the Court of Appeals concluded *Jones* was highly distinguishable and reversed the trial court. The matter was remanded for further discovery to obtain sufficient evidence regarding LMPD's

---

[1] Officer Pugh was sued in both his individual capacity and in his official capacity as an LMPD officer.

[2] Boyd had borrowed the vehicle he was driving from a friend who had rented it from Enterprise. The car was insured by Empire.

[3] In *Jones*, a Kentucky State Trooper was responding to a call for assistance from a local sheriff's deputy when he collided with another vehicle in a "blind" intersection, killing the other driver. The trooper was not in pursuit of another vehicle. In denying the trooper qualified official immunity, we held "the act of safely driving a police cruiser, even in an emergency, is not an act that typically requires any deliberation or the exercise of judgment. Rather, driving a police cruiser requires reactive decisions based on duty, training, and overall consideration of public safety." 150 S.W.3d at 53. The issue in *Jones* revolved around whether the trooper negligently operated his vehicle and adhered to standards for driving. *Jones* did not address whether initiation, continuation, and termination of a pursuit constituted a ministerial or discretionary act.

3

pursuit policies and Officer Pugh's compliance therewith to enable the trial court to properly rule on the immunity issue.

Nearly two years later, after extensive discovery had occurred related to LMPD's Standard Operating Procedures ("SOPs") for pursuits,[4] Officer Pugh moved for summary judgment, again arguing he was entitled to qualified official immunity. The motion was held in abeyance at Appellants' request for over three years, during which time more discovery was undertaken. In December 2016, the trial court entered an order finding Officer Pugh had not violated any of LMPD's pursuit policies and was required to employ discretion as to the means and method of pursuing Jones. Nevertheless, the trial court denied Officer Pugh's motion upon concluding the SOPs created a ministerial duty rather than a discretionary one, and whether Officer Pugh acted negligently in performing the ministerial act was a question for a jury to resolve. This decision was based on the repeated use of the word "shall" in the SOPs which the trial court believed rendered compliance merely the execution of specific acts arising from certain and fixed facts.

Officer Pugh filed an interlocutory appeal seeking review of the trial court's second denial of qualified official immunity. While Officer Pugh's appeal was pending, the trial court denied Metro's motion to dismiss based on sovereign immunity, and Metro filed an interlocutory appeal of the adverse

---

[4] During this period, Officer Pugh was deposed to provide the trial court sufficient testimony to independently make a determination regarding his compliance with the SOPs. LMPD had previously conducted an internal investigation and determined Officer Pugh had not violated the SOPs in his pursuit of Jones.

4

ruling. The two cases were consolidated for consideration by a single panel of the Court of Appeals. On March 29, 2019, the Court of Appeals rendered its Opinion[5] wherein it explicitly rejected the trial court's ruling the SOPs created a ministerial duty. It concluded while the SOPs required an officer to consider various factors in determining whether a pursuit was warranted, the officer is left to balance the facts and assess whether to institute or terminate a pursuit. Concluding the amount of deliberation and personal judgment involved in weighing the circumstances created a discretionary duty, the Court of Appeals held Officer Pugh was shielded by qualified official immunity. Further concluding Metro was entitled to summary judgment contrary to the trial court's ruling, the Court of Appeals reversed the trial court and remanded for entry of orders dismissing both parties. This Court granted discretionary review.

In seeking reversal, Appellants raise four allegations of error. First, they assert parties claiming qualified official immunity should not be entitled to pursue an interlocutory appeal when factual disputes exist. Next, they contend the Court of Appeals erred in reversing the trial court's conclusion Officer Pugh's duties were ministerial, thereby precluding his entitlement to qualified official immunity. Third, Appellants alternatively argue Officer Pugh did not act in good faith, removing his entitlement to qualified official immunity, and

---

[5] The Court of Appeals had previously rendered an Opinion in this matter on December 21, 2018, but that Opinion was withdrawn and replaced following the grant of a petition for rehearing and/or modification filed by the Appellants herein.

5

the Court of Appeals erred in not so holding. Finally, Appellants maintain the Court of Appeals erred in finding Officer Pugh and Metro are entitled to sovereign immunity protections.

Appellants' first argument essentially asks us to eliminate interlocutory appeals in qualified immunity cases. This we decline to do. Appellants contend qualified official immunity cases are inappropriate for interlocutory appeals because the determination of the applicability of such immunity involves fact-based exceptions which require completion of the litigation process. Citing CR[6] 56.03 and *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991), they suggest the existence of disputed facts acts as a prohibition on a trial court's ability to grant summary judgment on the immunity question. Appellants assert discovery must be completed and all disputed facts must be resolved by a jury before a trial court can rule on the issue of qualified official immunity. Accepting Appellants' argument would eviscerate the fundamental purposes of immunity.

We recognize trial courts must make certain factual findings when deciding a party's entitlement to qualified official immunity, and a modicum of discovery may be necessary before the court can reasonably make the determination. Those findings should be complete enough to enable adequate appellate review but must necessarily be limited to the very narrow issues required to determine if immunity is applicable, including the actor's status as

---

[6] Kentucky Rules of Civil Procedure.

a government official; the ministerial/discretionary distinction; if the act was ministerial, was the actor negligent; and, if the act was discretionary, was it done in good faith and within the scope of the officer's authority. However, the question of immunity is one of law that involves no disputed facts. Thus, examining the pertinent rule, policy, or regulation governing the challenged conduct is all that is necessary to make the characterization. Compliance with the rule, policy, or regulation simply is not relevant in that calculus. Rather, compliance is relevant to negligence and the issue of whether the act was undertaken in good faith. Contrary to Appellants' position, completion of the litigation process is not required to make any of these determinations, especially since the question of immunity is a threshold matter which must be determined in the first instance.

In *Breathitt County Board of Education v. Prater*, 292 S.W.3d 883, 886-87 (Ky. 2009), we held interlocutory appeals are appropriate in cases concerning denials of absolute immunity. This is because of the very nature of immunity protection. "[I]mmunity entitles its possessor to be free 'from the burdens of defending the action, not merely . . . from liability.'" *Id.* at 886 (quoting *Rowan County v. Sloas*, 201 S.W.3d 469, 474 (Ky. 2006)). "Obviously such an entitlement cannot be vindicated following a final judgment for by then the party claiming immunity has already borne the costs and burdens of defending the action." *Id.* Although *Prater* specifically addressed claims of absolute immunity, its logic is equally applicable in cases involving qualified official immunity and it has been so interpreted by this Court. *See, e.g., Ritchie v.*

7

*Turner*, 559 S.W.3d 822, 830 (Ky. 2018); *Baker v. Fields*, 543 S.W.3d 575, 577-78 (Ky. 2018). We maintain that position today.

> An order denying a substantial claim of immunity is not meaningfully reviewable, therefore, at the close of litigation, and that fact leads us to conclude, as has the Supreme Court of the United States, that an interlocutory appeal is necessary in such cases notwithstanding the general rule limiting appellate jurisdiction to "final" judgments.

*Prater*, 292 S.W.3d at 888.

Further, in *Sheets v. Ford Motor Company*, ___ S.W.3d ___, 2021 WL 2618203 (Ky. June 17, 2021), we recently had the opportunity to once again explain the jurisprudential history and refinement of the applicability of interlocutory appeals in Kentucky. At bottom, we reiterated there are three elements which must be satisfied to vest jurisdiction in an appellate court to review an interlocutory order.

> Those three elements are as follows: the interlocutory order must (1) conclusively decide an important issue separate from the merits of the case; (2) be effectively unreviewable following final judgment; and (3) involve a substantial public interest that would be imperiled absent an immediate appeal. [*Commonwealth v.*] *Farmer*, 423 S.W.3d [690,] 696-97 [(Ky. 2014)]. Next, we have been placing an increasing emphasis on the third element—that the interlocutory order must involve a substantial *public* interest that would be imperiled absent an immediate appeal.

*Id.* at *4. Applying this framework to the instant matter, we conclude all three elements have been met and an interlocutory appeal is appropriate. The Appellants' argument to the contrary is misplaced.

We next address Officer Pugh and Metro's entitlement to sovereign immunity before reaching the other allegations. "Sovereign immunity affords

8

the state absolute immunity from suit and 'extends to public officials sued in their representative (official) capacities, when the state is the real party against which relief in such cases is sought.'" *Louisville/Jefferson County Metro Gov't v. Cowan*, 508 S.W.3d 107, 109 (Ky. App. 2016) (quoting *Yanero v. Davis*, 65 S.W.3d 510, 517-18 (Ky. 2001)). "A consolidated local government shall be accorded the same sovereign immunity granted counties, their agencies, officers, and employees." KRS[7] 67C.101(2)(e). "Louisville Metro is a government entity" entitled to sovereign immunity. *Cowan*, 508 S.W.3d at 109; *see also Lexington-Fayette Urban County Gov't v. Smolcic*, 142 S.W.3d 128, 132 (Ky. 2004) ("[U]rban county governments constitute a new classification of county government . . . entitled to sovereign immunity[.]"). Further, sovereign immunity may only be waived "'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.'" *Withers v. University of Kentucky*, 939 S.W.2d 340, 346 (Ky. 1997) (quoting *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909)). There has been no assertion of waiver in this matter.

Based on these authorities, we agree with the Court of Appeals the trial court erred in concluding Metro was not entitled to sovereign immunity. Metro should have been dismissed from this suit. Likewise, Metro's sovereign immunity protection extends to Officer Pugh on Appellants' official capacity

---

[7] Kentucky Revised Statutes.

claims, requiring dismissal of those claims also. The Court of Appeals correctly so held.

Next, Appellants contend the Court of Appeals erred in concluding Officer Pugh's duties were discretionary, thereby entitling him to the cloak of qualified official immunity. They argue the trial court correctly found pursuits under the SOPs are ministerial acts for which no immunity protection is afforded when such acts are performed negligently. We disagree.

"The immunity that an agency enjoys is extended to the official acts of its officers and employees. However, when such officers or employees are sued for negligent acts in their individual capacities, they have qualified official immunity." *Autry v. Western Kentucky University*, 219 S.W.3d 713, 717 (Ky. 2007). In *Yanero*, 65 S.W.3d at 522, we explained public officials may enjoy qualified official immunity from tort liability in negligence actions "which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment." Entitlement to a defense of qualified official immunity is determined based on the function performed, not by the status or title of the officer or employee. *Id.* at 521 (citing *Salyer v. Patrick*, 874 F.2d 374 (6th Cir. 1989)). The defense applies to the negligent performance of "(1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority." *Id.* at 522 (internal citation omitted). "An act is not necessarily 'discretionary' just because the

10

officer performing it has some discretion with respect to the means or method to be employed." *Id.*

The qualified official immunity defense is not applicable to "the negligent performance of a ministerial act, *i.e.*, one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts." *Id.* (citing *Franklin County, Kentucky v. Malone*, 957 S.W.2d 195, 201 (Ky. 1997)). Because few acts are purely discretionary or purely ministerial, courts must look for the "*dominant* nature of the act." *Haney v. Monsky*, 311 S.W.3d 235, 240 (Ky. 2010).

Thus, our inquiry must focus on whether Officer Pugh's challenged conduct is discretionary or ministerial. As previously stated, LMPD conducted an internal investigation of Officer Pugh's actions in initiating the pursuit and exonerated him of violating any of the SOPs, a fact the trial court acknowledged. The trial court concluded the "dominant nature of the act" was Officer Pugh's pursuit of a suspected violent felon who was fleeing the scene of that alleged felony. It determined Officer Pugh had reasonably articulated why he believed Jones was a felon as required by the SOPs. However, because of the SOPs repeated use of the word "shall," the trial court determined compliance involved merely executing "a specific act arising from fixed and designated facts." Thus, the trial court held the dominant nature of the act of pursuit required obedience to orders, thereby rendering Officer Pugh's action ministerial.

11

The Court of Appeals disagreed with the trial court's assessment and held the SOPs required officers to consider various factors in reaching a decision on how to balance those factors and when to begin or end a pursuit. Citing *City of Brooksville v. Warner*, 533 S.W.3d 688, 694 (Ky. App. 2017), the panel determined the decision of whether to begin, continue, or end a pursuit constituted a discretionary act. Further finding Officer Pugh had acted in good faith and within the scope of his authority, the Court of Appeals held he was entitled to qualified official immunity and reversed the decision of the trial court.

Appellants argue the decision of the Court of Appeals is wrong and directly contradicts the result in *Mattingly v. Mitchell*, 425 S.W.3d 85 (Ky. App. 2013). In *Mattingly*, a panel of the Court of Appeals considered the same SOPs in issue in this case and concluded an officer who was involved in a deadly chase was not entitled to qualified official immunity upon finding the officer's duties under the SOPs were ministerial. The officer in that case plainly violated SOP 12.1.9 when he knowingly initiated a high-speed pursuit of a traffic offender.[8] The prohibition on those types of pursuits is clear and mandatory, making it a ministerial duty for officers. The officer's deviation from the absolute, certain, and imperative order contained in the SOPs constituted an act for which he was not entitled to qualified official immunity. Contrary to Appellants' contention, *Mattingly* is distinguishable from the

---

[8] SOP 12.1.9 specifically prohibits initiation or participation in pursuits when the fleeing suspect's offense is a misdemeanor or traffic violation.

instant matter and is not controlling. Additional analysis is therefore

warranted.

Because LMPD has promulgated an operating manual containing SOPs

related to pursuits, review of those directives is necessary to determine whether

the existence of those policy guidelines renders Officer Pugh's actions

ministerial as held by the trial court, or whether the guidelines create a

discretionary duty as held by the Court of Appeals. Resolution of this question

necessarily begins with an examination of the applicable SOPs related to

pursuits which we set out verbatim.

> SOP 12.1.1 *POLICY*
>
> It shall be the policy of the Louisville Metro Police Department that
> the pursuit operation of a police vehicle is justified only when the
> necessity of immediate apprehension outweighs the dangers
> created by:
>
> • The operation of the pursuing police vehicle, or,
> • The responding police vehicle, or,
> • The offender being pursued.
>
> The officer must have a reason to believe that the violator being
> pursued is a felon or suspected felon. Officers shall pursue with
> the vehicle's emergency lights and siren in continuous operation.
> Police vehicles are exempt from most traffic regulations, pursuant
> to KRS 189.940. However, no portion of this statute relieves the
> driver from operating the vehicle with due regard for the safety of
> all persons using the roadway.
>
> Officers and supervisors shall be held accountable for their actions
> in a pursuit and must be able to articulate why they believe that
> someone is a suspected felon.
> SOP 12.1.2 *DEFINITION*
>
> Pursuit: An active attempt by a law enforcement officer operating
> a police vehicle, utilizing emergency equipment, to apprehend the
> operator of a fleeing vehicle who is attempting to avoid arrest by
> using speed or other evasive tactics.

13

SOP 12.1.3 *RESPONSIBILITIES OF PRIMARY UNIT*

The decision to initiate a pursuit must be based on the pursuing officer's reasonable belief that the suspect is a felon or suspected felon. The officer must weigh the immediate danger or potential danger to the public should the suspect be allowed to remain at large against the danger or potential danger created by the pursuit itself.

• Nature and seriousness of the offense
• The amount of vehicular and pedestrian traffic in the area
• Likelihood of successful apprehension
• Area or location characteristics
• Availability of assistance
• Environmental conditions (e.g. lighting and weather)
• The performance capabilities of the pursuit vehicle
• The condition of the road surface on which the pursuit is being conducted
• The officer's familiarity with the geographic area of the pursuit

The officer initiating the pursuit shall, as soon as practical, provide the following information by radio:

• Car number
• Location
• Direction of travel
• Approximate speed
• Reason for pursuit
• Vehicle description
• License number if known
• Number and description of occupants
• Traffic conditions

Failure to provide the information to MetroSafe shall result in an immediate termination of the pursuit by a commanding officer. The initiating unit shall be in command and bear operational responsibility for the pursuit until the pursuit is acknowledged by a commanding officer.

Unmarked and specialty vehicles shall have a fully marked police vehicle involved in the pursuit as soon as possible. The marked unit shall take over the primary unit position when feasible. Police vehicles and rental vehicles without emergency lights and siren are prohibited from participating in a pursuit.

SOP 12.1.9 *NON-INITIATION OF PURSUITS*

Officers shall not initiate or participate in a pursuit when:

• The offense is a traffic infraction or misdemeanor.
• The offense is a non-violent felony wherein the suspect is known.
• When passengers or prisoners are in the police vehicle.

SOP 12.1.10 *TERMINATION*

Pursuits shall be terminated when the risks created by continuing the pursuit outweigh the need for immediate apprehension.

An officer's decision to terminate a pursuit for safety reasons is not subject to criticism or review.

Pursuits shall be terminated immediately when the following occur:

• A supervisor in charge of the pursuit or a higher-ranking officer orders it terminated
• The officer loses visual contact and the likelihood for apprehension is lessened
• The officer doesn't believe it to be safe to continue the pursuit
• The officer is lost and unfamiliar with the area
• The officer is out of radio range or loses contact with communications

Felonies that occur as a direct result of the pursuit itself (e.g. Fleeing and Evading, Wanton Endangerment) are not justification for continuing a pursuit.

Pursuits may be terminated by the pursuing officer, the supervisor in charge of the pursuit or any commanding officer of a higher rank than the supervisor who is in charge of the pursuit. Supervisors will be held accountable for failure to exercise authority under this section.

The SOPs contain a mixture of discretionary and ministerial elements. For instance, the requirement in SOP 12.1.1 that officers must continuously use their emergency lights and siren during a pursuit is absolute, certain, and imperative, and therefore ministerial. Likewise, SOP 12.1.9 and 12.1.10

15

contain explicit restrictions on initiation and termination of pursuits which are simple and definite, leaving nothing to the discretion of the officer. These too create ministerial duties.

In contrast, SOP 12.1.3 gives a list of factors to be considered prior to initiation of a pursuit but leaves to the officer's individual professional judgment to weigh the law enforcement goals and the specific factors of a situation. The Court of Appeals relied on this SOP to hold Officer Pugh was entitled to the benefit of qualified official immunity, and we believe the Court of Appeals was correct. Of course, this discretionary duty is necessarily tempered by the ministerial duties imposed by the other SOPs. However, those limitations do not completely remove the decision to initiate, continue, or terminate a pursuit from the realm of discretionary acts.

The decision to engage in a pursuit and to continue the chase involves weighing many factors including the dangerousness of the fleeing suspect and the importance of apprehension; the extent of danger to other persons of pursuit because of weather, time of day, road and traffic conditions; and the availability of alternatives to pursuit such as road blocks or aerial observation. These and other questions must be considered when an officer is determining whether to engage in a vehicular pursuit and little time exists for reflection. Officers are required to make split-second decisions under challenging circumstances with imperfect, incomplete, or uncertain information. It is difficult to imagine a situation in which the exercise of significant, independent

16

professional judgment would be more necessary. The Court of Appeals correctly held Officer Pugh's actions were discretionary.

Appellants next argue Officer Pugh did not act in good faith, again removing his entitlement to qualified official immunity. They contend the Court of Appeals erred in holding to the contrary. Appellants assert the determination of good faith or bad faith in initiating the pursuit addresses Officer Pugh's state of mind, a matter best left to a jury to decide. Again, we disagree.

To show a peace officer acted in bad faith when making an on-the-spot judgment call, the complainant must demonstrate the officer "*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate" the complainant's rights or that the officer "took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury . . . ." *Yanero,* 65 S.W.3d at 523 (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 815 (1982)). "Once the officer or employee has shown *prima facie* that the act was performed within the scope of his/her discretionary authority, the burden shifts to the plaintiff to establish by direct or circumstantial evidence that the discretionary act was not performed in good faith." *Id.* (citation omitted).

Appellants carefully select portions of Officer Pugh's deposition testimony in an effort to stitch together sufficient support for their contention he acted in bad faith. They challenge his belief Jones was a felon and the reasonableness of initiating the pursuit and the speeds reached during the chase. They

17

contend Officer Pugh's admissions he was "irritated" when Jones took off and that he "knew" Jones was going to wreck seemingly establish impure motives. They argue Jones' driving was sufficiently reckless to require Officer Pugh to terminate the pursuit and he acted with bad faith in failing to do so. Appellants attempt to present the issue as one requiring a jury to make the final determination. We are unconvinced.

Despite the length of time this matter has been pending and the amount of discovery which has been taken, Appellants have been unable to establish Officer Pugh acted in bad faith. While the selected portions of Officer Pugh's testimony are troubling to Appellants, these snippets fail to establish he lacked good faith or had an improper motive in initiating the pursuit of Jones. As explained by the United States Supreme Court,

> [W]e are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive *so recklessly* that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights.

*Scott v. Harris*, 550 U.S. 372, 385 (2007). "[T]o avoid potential liability, officers will simply drive past situations they encounter instead of stopping or investigating. Such a result is not in the public interest and is not required by the law." *City of Florence, Kentucky v. Chipman*, 38 S.W.3d 387, 393 (Ky. 2001).

Further, it is not in the public's interest to allow a jury of laymen with the benefit of 20/20 hindsight to second-guess the exercise of a police officer's

18

discretionary professional duty. Such discretion is no discretion at all. There is considerable discretion inherent in law enforcement's response to an infinite array of situations implicating public safety on a daily basis. Appellants' contention to the contrary is without merit.

Finally, we pause to note immunity is intended to act as a shield, not just from liability, but also the burdens of a suit. This case illustrates an extreme failure of the purposes of immunity as it has now been pending for nearly fourteen years. This becomes especially clear when we consider the function of sovereign immunity, which "entitles its possessor to be free from the burdens of defending the action, not merely . . . from liability . . . . Immunity from suit includes protection against the cost of trial and the burdens of broad-reaching discovery that are peculiarly disruptive of effective government." *Prater,* 292 S.W.3d at 886 (internal citations and quotation marks omitted). While the delays in this particular case cannot be attributed to a single source, it is clear Metro and Officer Pugh have shouldered the burden of this suit far longer than either should have in light of their entitlement to immunity.

For the foregoing reasons, the judgment of the Court of Appeals is AFFIRMED.

All sitting. All concur.

19

COUNSEL FOR APPELLANTS CHRIS MEINHART, ADMINISTRATOR OF THE ESTATE OF DEMETRA BOYD; JUNENEAN HUSTON, AS PARENT, NEXT FRIEND AND ON BEHALF OF DEMETRICK BOYD, JR., A MINOR; TOSCA BELL, AS PARENT, NEXT FRIEND AND ON BEHALF OF LYNN-ASIA BELL, A MINOR; TOSCA BELL, AS PARENT, NEXT FRIEND AND ON BEHALF OF KEI-VONTEZ BELL, A MINOR; TOSCA BELL, AS PARENT, NEXT FRIEND AND ON BEHALF OF CORTEZ MOORE; LYNN TILLMAN AND DARNELL BOYD, AS PARENTS, NEXT FRIENDS AND ON BEHALF OF DEMETRIUS BOYD, A MINOR:

Chadwick Neal Gardner
Gardner Law, PLLC


COUNSEL FOR APPELLANTS, AIRECA SMITH, INDIVIDUALLY AND AS PARENT AND NEXT FRIEND OF LOUIS SIMMONS, III, A MINOR:

Timothy James Byland
Kummer Dilts Collins & Byland PLLC


COUNSEL FOR APPELLANT, DEMETRICK BOYD, SR.:

Andrew John Horne
Horne Law Office


COUNSEL FOR APPELLEES, LOUISVILLE METRO GOVERNMENT AND THOMAS PUGH, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS A LOUISVILLE/JEFFERSON COUNTY METRO POLICE OFFICER:

Michael J. O'Connell
Jefferson County Attorney

Kristie B. Walker
Assistant Jefferson County Attorney


COUNSEL FOR APPELLEES, EMPIRE FIRE AND MARINE INSURANCE CO. AND ENTERPRISE RENT-A-CAR COMPANY OF KENTUCKY:

Jay Richard Langenbahn
Lindhorst & Dreidame