RENDERED: FEBRUARY 17, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0336-MR

HENRY VOLENTINE,
INDIVIDUALLY; HARDIN COUNTY
OFFICE OF SHERIFF; AND HENRY
VOLENTINE, IN HIS OFFICIAL
CAPACITY AS HARDIN COUNTY
DEPUTY SHERIFF                                                    APPELLANTS


                        APPEAL FROM HARDIN CIRCUIT COURT
v.                      HONORABLE JOHN D. SIMCOE, JUDGE
                        ACTION NO. 16-CI-01433


SUSAN SHEEHY AND MAURICE
GREEN                                                               APPELLEES


                            OPINION
                            REVERSING

                        ** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; DIXON AND GOODWINE, JUDGES.

DIXON, JUDGE: Henry Volentine, individually and in his official capacity as a

Hardin County Deputy Sheriff, and the Hardin County Office of Sheriff (HCOS)

appeal from the order denying them immunity entered by the Hardin Circuit Court

on February 28, 2022.  Following a careful review of the briefs, the record, and the law, we reverse.

## BACKGROUND FACTS AND PROCEDURAL HISTORY

On October 14, 2014, Hardin County Deputy Sheriff Henry Volentine ran the license plate number of a vehicle being operated by Maurice C. Green and discovered it was registered to a different vehicle.  Consequently, Volentine initiated a traffic stop.

Green pulled into a Speedway parking lot, but as Volentine approached Green's vehicle, Green "took off."  Volentine perceived that Green, as he fled, struck a female pedestrian near her vehicle at a gas pump and nearly struck a man walking toward the entrance of the gas station, causing the man to jump out of the way to avoid being hit.

Given these events, Volentine decided to pursue Green and kept in contact with the HCOS dispatcher via radio.  Near the end of the pursuit, Green threw a black duffle bag from his vehicle.  Shortly after, Green's vehicle crossed the centerline and hit a vehicle operated by Susan Sheehy head-on.

Sheehy was injured in the collision and had to be extricated from her vehicle and transported to a local hospital.  She underwent multiple surgeries, but still has lasting pain and injuries.  Accordingly, she filed the underlying lawsuit in 2016.

Volentine and the HCOS answered Sheehy's complaint and amended their answer to include their immunity defenses. Trial was set multiple times but was continued and reset for various reasons. In 2021, after substantial discovery was conducted, Volentine and the HCOS moved the trial court for summary judgment on immunity grounds. After the matter was fully briefed and a hearing held, the trial court denied summary judgment, finding no immunity. This appeal followed.

## STANDARD OF REVIEW

This appeal is properly before us because an order denying a claim of immunity is immediately appealable. *Harrod v. Caney*, 547 S.W.3d 536, 540 (Ky. App. 2018); *Breathitt Cnty. Bd. of Educ. v. Prater*, 292 S.W.3d 883, 887 (Ky. 2009); *Mattingly v. Mitchell*, 425 S.W.3d 85, 89 (Ky. App. 2013). Entitlement to immunity is a question of law. *See Univ. of Louisville v. Rothstein*, 532 S.W.3d 644, 647 (Ky. 2017); *Rowan Cnty. v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006) (citing *Jefferson Cnty. Fiscal Ct. v. Peerce*, 132 S.W.3d 824, 825 (Ky. 2004)). Questions of law are reviewed *de novo*. *Rothstein*, 532 S.W.3d at 647 (citing *Cumberland Valley Contractors, Inc. v. Bell Cnty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007)).

Additionally, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[1] 56.03. An appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006) (citing *Blevins v. Moran*, 12 S.W.3d 698 (Ky. App. 2000)).

## LEGAL ANALYSIS

On appeal, Volentine and the HCOS contend the trial court erred in finding they were not entitled to sovereign and/or qualified immunity. Sovereign immunity is broad, protecting the state not only from the imposition of money damages but also from the burden of defending a lawsuit. *Meinhart v. Louisville Metro Gov't*, 627 S.W.3d 824, 830 (Ky. 2021); *Lexington-Fayette Urban Cnty. Gov't v. Smolcic*, 142 S.W.3d 128, 135 (Ky. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396, 409-10 (1982) ("Immunity from suit includes protection against the 'cost[s] of trial' and the 'burdens of broad-reaching discovery' that 'are peculiarly disruptive of effective

---

[1] Kentucky Rules of Civil Procedure.

government.'")). The doctrine of sovereign immunity also covers departments, boards, and agencies that are integral parts of state government, such as law enforcement agencies and their employees. *See Bryant v. Louisville Metro Hous. Auth.*, 568 S.W.3d 839, 846 (Ky. 2019). The immunity of governmental and quasi-governmental agencies is referred to as "governmental" as opposed to "sovereign" immunity, although this delineation in terminology is a distinction without a difference. *Id.* The immunity that extends to governmental employees in their individual capacities is commonly referred to as "qualified" immunity. *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

Whether qualified immunity extends to an individual turns on whether their actions – or inactions – were discretionary or ministerial. *Id.* "Generally, a governmental employee can be held personally liable for negligently failing to perform or negligently performing a ministerial act." *Marson v. Thomason*, 438 S.W.3d 292, 296 (Ky. 2014). By contrast, such employees are immune when performing discretionary acts, so long as they act in good faith. Thus, qualified immunity "rests not on the status or title of the officer or employee, but on the function performed." *Yanero*, 65 S.W.3d at 521.

While this case is certainly not identical to *Meinhart*, it is similar enough factually that we are obligated to follow the Supreme Court's application of the law in that case. By contrast, the case herein is factually distinguishable

from *Mattingly*, 425 S.W.3d 85, in which an officer initiated an unauthorized pursuit based solely on speeding.

In *Meinhart*, a police officer initiated a pursuit against an assault suspect which led to an automobile accident and lawsuit. The "dominant nature of the act" was a pursuit of a suspected violent felon fleeing the scene of the alleged felony. There, the officer was able to reasonably articulate why he believed the suspect was a felon as required by his law enforcement agency's Standard Operating Procedures (SOPs). *Meinhart*, 627 S.W.3d at 832. The relevant SOP in that case provides, "The officer must have a reason to believe that the violator being pursued is a felon or suspected felon." *Id.* at 833.

In the case herein, the dominate nature of the act at issue was also the pursuit of a suspected felon fleeing the scene of the alleged felony. Here, Volentine was able to articulate why he believed Green was a felon as required by the SOPs of the HCOS. The relevant SOP provides, "The deputy must have reasonable suspicion to believe that the violator being pursued is a felon or a suspected felon." At the Speedway, Volentine believed that he witnessed Green commit either assault in the first or second degree, both of which are felony offenses, upon two persons in the parking lot. *See* Kentucky Revised Statutes (KRS) 508.010 and 508.020.

In both *Meinhart* and the case herein "the SOPs required officers to consider various factors in reaching a decision on how to balance those factors and when to begin or end a pursuit." 627 S.W.3d at 832. With regard to pursuits by law enforcement, "Officers are required to make split-second decisions under challenging circumstances with imperfect, incomplete, or uncertain information. It is difficult to imagine a situation in which the exercise of significant, independent professional judgment would be more necessary." *Id.* at 834. Accordingly, "the decision of whether to begin, continue, or end a pursuit constituted a discretionary act." *Id.* at 832. *See also City of Brooksville v. Warner*, 533 S.W.3d 688, 694 (Ky. App. 2017).

Ultimately, the trial court erroneously disregarded Volentine's real time perception of the events leading up to the pursuit and, instead, impermissibly relied on its review of Speedway's video footage in hindsight. Volentine exercised his discretion in determining whether to initiate the pursuit, entitling him to qualified immunity.

The trial court also erred in finding that Volentine violated the HCOS SOP that "Deputies Will Terminate A Pursuit When: . . . No Field Supervisor or higher authority can be contacted to approve the pursuit's continuation." At the time, Volentine was the most senior officer on duty. At his deposition, he testified that he could not personally contact a higher authority without stopping and

-7-

making a phone call and, because everything was happening so quickly, he was unsure whether dispatch was trying to call a higher authority on his behalf to approve continuation of the pursuit.

Although it does not appear that this exact issue has been addressed by our Kentucky courts, it is well-established that "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011) (internal quotation marks omitted). Additionally,

> we must avoid substituting our personal notions of proper police procedure for the instantaneous decision of the officer at the scene. We must never allow the theoretical, sanitized world of our imagination to replace the dangerous and complex world that policemen face every day. What constitutes "reasonable" action may seem quite different to someone facing a possible assailant than to someone analyzing the question at leisure.

*Boyd v. Baeppler*, 215 F.3d 594, 602 (6th Cir. 2000). Therefore, Volentine's belief that he complied with this SOP entitles him to qualified immunity, even if his belief was mistaken.

The trial court also erred in finding Volentine violated the HCOS SOP that "Deputies Will Terminate A Pursuit When: . . . The circumstances of the

pursuit present an extreme safety hazard to the public, the deputy, or the suspect."

The trial court failed to note that the HCOS's policy also provides:

> Despite the risks, experts recognize that well-regulated deputy pursuits are occasionally necessary. Otherwise, if law enforcement agencies were to adopt an absolute no-pursuit policy, more criminals would have incentive to flee, and possibly to go on to commit more crimes.
>
> . . .
>
> It is difficult if not impossible to describe exactly how a fleeing motorist can or should be apprehended or the manner in which the deputies should respond to calls or emergency assistance, except to say that it must be done legally and safely. It is also difficult to list the specific traffic regulations that officers may or may not disregard. Likewise one cannot set a safe maximum speed or in all cases specify the maximum number of deputies and vehicles that should be involved. The pursuing/ responding deputy and/or supervisor shall, in a short period of time, use their own best judgment including their training and experience, bearing in mind, the policies and procedures and directions outlined in these guidelines and apply them collectively to the existing circumstances.

Similarly, the Supreme Court of the United States has held:

> we are loath to lay down a rule requiring the police to allow fleeing suspects to get away whenever they drive so recklessly that they put other people's lives in danger. It is obvious the perverse incentives such a rule would create: Every fleeing motorist would know that escape is within his grasp, if only he accelerates to 90 miles per hour, crosses the double-yellow line a few times, and runs a few red lights. The Constitution assuredly does not impose this invitation to impunity-earned-by-recklessness.

*Scott v. Harris*, 550 U.S. 372, 385-86, 127 S. Ct. 1769, 1779, 167 L. Ed. 2d 686 (2007).

Here, Sheehy twists Volentine's words so that it appears he violated this SOP because he acknowledged that pursuit driving – including this pursuit – is dangerous and that Green was driving very dangerously. Although the wording of the HCOS SOP appears mandatory or ministerial, it requires an officer's discretion to determine when the "circumstances of the pursuit present an extreme safety hazard to the public, the deputy, or the suspect." Given the facts and circumstances of this case, the trial court erroneously found Volentine violated this SOP and was, therefore, not entitled to immunity.

For the reasons discussed herein, Volentine's decisions to initiate and continue this pursuit were discretionary in nature. Sheehy does not allege that Volentine acted in bad faith or outside the scope of his authority. Thus, the trial court erred in finding Volentine and the HCOS unimmune to Sheehy's claim.[2]

We also further echo the sentiments of the Supreme Court of Kentucky:

> it is not in the public's interest to allow a jury of laymen
> with the benefit of 20/20 hindsight to second-guess the

---

[2] "[T]he plain language of KRS 70.040 leaves no room for any other reasonable construction than a waiver of the sheriff's official immunity (the office of sheriff) for the **tortious acts or omissions** of his deputies." *Jones v. Cross*, 260 S.W.3d 343, 346 (Ky. 2008) (emphasis added). Therefore, it stands to reason that since Volentine did not commit a tortious act or omission, the HCOS is not liable to Sheehy, and its immunity from suit remains intact.

-10-

exercise of a police officer's discretionary professional duty. Such discretion is no discretion at all. There is considerable discretion inherent in law enforcement's response to an infinite array of situations implicating public safety on a daily basis. . . .

Finally, we pause to note immunity is intended to act as a shield, not just from liability, but also the burdens of a suit.

*Meinhart*, 627 S.W.3d at 835-36.

## CONCLUSION

Therefore, and for the foregoing reasons, the order of the Hardin Circuit Court is REVERSED.

ALL CONCUR.

| BRIEFS FOR APPELLANTS: | BRIEF FOR APPELLEE SUSAN SHEEHY: |
|---|---|
| R. Keith Bond<br>Elizabethtown, Kentucky | Adrian Mendiondo<br>Lexington, Kentucky |
| | NO BRIEF FILED FOR APPELLEE<br>MAURICE C. GREEN. |